**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **ANDRE SHELTON** | : | |
| | : | **CIVIL ACTION** |
| v. | : | **No. 24-5657** |
| | : | |
| **WALI CHAUDHRY, et al.** | : | |

**McHUGH, J.**                                                      **January 27, 2025**

## MEMORANDUM

As the Third Circuit has described Rule 11, it "imposes an obligation on counsel and client analogous to the railroad crossing sign, 'Stop, Look and Listen.'  It may be rephrased, 'Stop, Think, Investigate and Research' before filing papers either to initiate a suit or to conduct the litigation.  These obligations conform to those practices which responsible lawyers have always employed in vigorously representing their clients while recognizing the court's duty to serve the public efficiently."  *Gaiardo v. Ethyl Corp.,* 835 F.2d 479, 482 (3d Cir. 1987).  Here, an experienced attorney who holds himself out as a leader of the plaintiff's tort bar filed a complaint rooted in diversity jurisdiction, while simultaneously pleading facts demonstrating that such jurisdiction did not exist.  Following a dismissal of the case but no accompanying sanctions, counsel returned with a second action arising out of the same accident, mispresenting the existence of venue in this district, and in the process flatly contradicting representations he previously made to this Court in seeking to avoid sanctions.  Two blatant violations of Rule 11 arising out of the same matter is a situation that calls out for sanctions.  Regrettably, this cavalier disregard of professional obligations is not an isolated occurrence, so the sanctions imposed must be meaningful.

## I.     Relevant Background

As detailed below, this case spans two dockets arising out of the same automobile accident in which the plaintiffs are represented by attorney Marc I. Simon.  The first, 24-cv-5307, was dismissed for a lack of subject matter jurisdiction.  Subsequently, Mr. Simon refiled a Second Complaint in 24-cv-5657, now subject to transfer because of a lack of proper venue.

### A.  First Complaint

On October 2, 2024, attorney Marc I. Simon filed a personal injury action in this court on behalf of his client, Andre Shelton.  First Compl., *Shelton v. Chaudhry et al.,* 24-cv-5307, ECF 1. This Complaint, signed and verified by Mr. Simon, asserted diversity jurisdiction as the basis for the court's subject matter jurisdiction.  First Compl. ¶ 9; *id.* at Civil Cover Sheet.  However, the Complaint pled a lack of diversity.   According to the Complaint, Plaintiff is a citizen of Pennsylvania.  First Compl. ¶¶ 1, 9.  Although some defendants are identified as citizens of Virginia, the Complaint explicitly pled that Defendants Keith Cannarella and Robert Fox are also citizens of Pennsylvania, and further pled that Defendants Fox Transportation, Inc., RWF Leasing, LTD., and RWF Management Corp. are corporate entities with their principal place of business in Pennsylvania.  First Compl. ¶ 9.  I dismissed the action without prejudice on October 15 for a lack of jurisdiction.  ECF 4, 24-cv-5307

Concerned by this totally unfounded assertion of jurisdiction, I issued a Rule to Show Cause on October 15, requesting that Mr. Simon explain why he should not be sanctioned under Rule 11 for asserting diversity while pleading facts that explicitly demonstrated the absence of diversity jurisdiction, requiring the Court to devote time and attention to addressing a frivolous pleading.  *See* First Order to Show Cause, ECF 5, 24-cv-5307.

Mr. Simon responded on October 23 and acknowledged his mistake. First Resp., ECF 6, 24-cv-5307. He explained that:

> this case involved two separate vehicle collisions. Initially, a Virginia Defendant driver, driving a Virginia Defendant's tractor trailer, as evidenced by the police report attached hereto as Exhibit 1, drifted out of its lane, and struck another tractor trailer and then jackknifed in the road. The police report clearly indicates that the Virginia driver and Virginia owner caused the collision. Shortly thereafter, my client, a Pennsylvania resident, drove into the Virginia driver and Virginia owner's tractor trailer. This was captured in a subsequent police report, attached as Exhibit 2.

*Id.* at 1-2. The pleading error apparently arose when Mr. Simon told his team to file suit in the Eastern District of Pennsylvania but failed to tell them to only include the Virginia citizens as defendants. *Id.* at 2. Simon's employees therefore included the Pennsylvania Defendants from the second tractor trailer, and Simon "simply missed the fact that both Defendant drivers and owners were sued" when he "reviewed the Complaint and signed off on it." *Id.* at 2. Notably, the five non-diverse Defendants' Pennsylvania addresses are clearly included in the Complaint caption and their Pennsylvania citizenship is referenced throughout the Complaint. First Compl. ¶¶ 3-9, 13, 16, 18. There are also numerous counts brought solely against the non-diverse Defendants. *Id.* ¶¶ 42-93. Even a cursory review would reveal the contradictions. Notwithstanding the egregious nature of the error, no sanctions were imposed.

### B. Second Complaint

On the same day that Mr. Simon responded to my First Order to Show Cause, he filed a new Complaint solely against the two Virginia Defendants – the Virginia citizen who drove one of the tractor trailers and the Virginia corporation that employed the driver – thereby meeting the requirements for diversity jurisdiction. *See* Second Compl., ECF 1, 24-cv-5657. But the Second Complaint presented new problems.

First, it incongruously represented that the motor vehicle accident at issue in this case occurred in "Alexandra," Virginia[1] while simultaneously asserting venue within the Eastern District of Pennsylvania on the ground that "a substantial portion of the events or omissions giving rise to the claims" occurred here.  Second Compl. ¶¶ 5-6.  Neither of these representations are accurate.  The accident indisputably occurred in the Middle District of Pennsylvania, as already established by the two police reports and the First Complaint.  *See* First Resp. Exs. 1&2 (the police reports); First Compl. ¶ 11 ("Plaintiff was the operator of a motor vehicle traveling southbound on I-81, at/near mile marker 93"[2]).

In addition, the Second Complaint's description of the accident directly contradicted Simon's prior representations to the Court.  In explaining how the First Complaint was botched, Simon attached police reports representing that there were two separate vehicle collisions.  First, two tractor trailers crashed; one came to rest partially on the road.  First Resp. at 1; *id.* at Ex. 1. Subsequently, Plaintiff Sheldon "drove into" the tractor trailer that was partially on the road.  *Id.* at 1; *id.* at Ex. 2.  But in the Second Complaint, Simon revises that narrative and pleads that the Virginia driver was "driving . . . behind Plaintiff's vehicle when he/she suddenly, and without warning, crashed into the rear-end of the Plaintiff's vehicle."  Second Compl. ¶ 9.

Dismayed by Simon's continued factual and legal misrepresentations to the Court, I ordered him to show cause why he should not be subject to Rule 11 sanctions for filing a factually

---

[1] To the Court's knowledge, there is no municipality of "Alexandra" in Virginia.  However, the address listed in the Complaint as the location of the accident corresponds to a location in Alexandria, Virginia. *See* Second Compl. ¶ 6.

[2] This statement in the First Complaint, which appears to be accurate according to the police reports, was revised  in the Second Complaint to plead erroneously that: "Plaintiff was the operator of a motor vehicle traveling on *2707 Arlington Drive Alexandra VA 22306*."  Second Compl. ¶ 6 (emphasis added).

inaccurate Complaint with unfounded venue assertions.  Second Order to Show Cause, ECF 9, 24-cv-5657.

On December 5, Mr. Simon responded and again apologized for his "sloppiness."  Second Resp. at 1, ECF 10, 24-cv-5657.  Simon acknowledged that his Second Complaint inaccurately described where the accident happened and what occurred.  *Id*.  Simon recognized that these were "silly and stupid mistakes that demonstrate poor draftsmanship," and claimed that the errors "were neither intentional nor malicious."  *Id*. at 2.

Mr. Simon now acknowledges the correct location of the accident and has stipulated to transfer the matter to the Middle District.  But he styles this as a favor to the Court and the Defendants, contending post-hoc that venue is proper in the Eastern District under a sufficient contacts theory.  *Id*. at 3.  This concession, he submits, "begins to atone for my earlier conduct" by saving the Court and Defendants time.  *Id*.

On December 11, I provided Simon with notice that the Court was considering both monetary and non-monetary sanctions.  Order Granting Leave, ECF 12, 24-cv-5657.  I granted Simon leave to submit any supplemental materials and to request a sanctions hearing.  *Id*.  Mr. Simon responded on December 20, declining to supplement the record and agreeing that a hearing was not necessary.  ECF 13, 24-cv-5657.

## II.    Legal Standard: Federal Rule of Civil Procedure 11

Long before Federal Rule of Civil Procedure 11, this Court has recognized a lawyer's general duty of investigation.  *See Nieman v. Long*, 31 F.Supp. 30, 31 (E.D. Pa. 1939).  Rule 11 codified these responsibilities and formalized a sanctions process.  Now, Rule 11(b) imposes obligations on any attorney who signs and files a pleading in court.  Fed. R. Civ. P. 11(b).  Relevant here, Rule 11(b) imposes a duty to make sure that "legal contentions are warranted by existing law

or by a nonfrivolous argument," 11(b)(2), and a duty to ensure that "factual contentions have evidentiary support," 11(b)(3).

"To satisfy the affirmative duty imposed by Rule 11, an attorney must inquire into both the facts and the law before filing papers with the court." *Napier v. Thirty or More Unidentified Fed. Agents, Emps. or Officers*, 855 F.2d 1080, 1091 (3d Cir. 1988). "The legal standard to be applied when evaluating conduct allegedly violative of Rule 11 is reasonableness under the circumstances." *Ford Motor Co. v. Summit Motor Products, Inc.,* 930 F.2d 277, 289 (3d Cir. 1991). This is a "fact specific" standard, and courts "must consider all the circumstances." *CTC Imports & Exports v. Nigerian Petroleum Corp.*, 951 F.2d 573, 578 (3d Cir. 1991). Central to this analysis is whether the filer had "an objective knowledge or belief at the time of the filing of a challenged paper that the claim was well-grounded in law and fact." *Ford Motor Co.,* 930 F.2d at 289. Critically, the "objective standard of reasonable inquiry [] does not mandate a finding of bad faith." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 47 (1991). Instead, "Rule 11 requires only negligence." *Wharton v. Superintendent Graterford SCI*, 95 F.4th 140, 147 (3d Cir. 2024).

If a "court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction on any attorney . . . that violated the rule." Fed. R. Civ. P. 11(c)(1). Courts may impose sanctions sua sponte, but should "first enter an order describing the specific conduct that it believes will warrant sanctions and direct the person it seeks to sanction to show cause why particular sanctions should not be imposed." *Martin v. Brown*, 63 F.3d 1252, 1264 (3d Cir. 1995). Bad faith is not required. *Wharton*, 95 F.4th at 148.

## III.    Discussion

"As officers of the court, lawyers must not mislead courts. So before they state facts, they must investigate reasonably." *Wharton*, 95 F.4th at 151. As part of this duty, "Federal Rule of

Civil Procedure 11 requires attorneys to be careful and scrupulously honest in their filings and representations to the court." *Young v. Smith*, 905 F.3d 229, 234 (3d Cir. 2018). Mr. Simon has failed to reasonably investigate the facts and law of this case and has been duplicitous in his representations to the Court. In doing so, Simon has violated Rule 11, warranting the imposition of three sanctions to deter future violations.

**A. Simon Violated Rule 11**

*1. 11(b)(3): Inquiry into the Facts*

Pursuant to Rule 11, by signing the two Complaints, Simon "certifie[d] that to the best of [his] knowledge, information and belief, formed after an inquiry reasonable under the circumstances: . . . (3) the factual contentions have evidentiary support." Fed. R. Civ. P. 11(b). "[A] court may sanction attorneys under Rule 11(b)(3) for factual assertions they know – *or after reasonable inquiry should have known* – are false or wholly unsupported." *Wharton*, 95 F.4th at 148 (citations omitted) (emphasis in original).

Simon's Second Complaint contains two factual assertions that he knew – or should have known – were false. First, Simon claimed both that the accident in question occurred in "Alexandra," Virginia[3] while also asserting that "a substantial portion of the events or omissions giving rise to this claim" occurred in the Eastern District of Pennsylvania. Second Compl. ¶¶ 5-6. Not only do these two allegations contradict each other, but they are both inaccurate. The accident indisputably happened in the Middle District of Pennsylvania, as evidenced by the two police reports – which Mr. Simon had in his possession and filed as exhibits in his First Response – that

---

[3] Simon acknowledges his error in saying the accident occurred in Virginia, saying "I cut and pasted the defendant driver's address . . . as the location of the collision." Second Resp. at 1.

repeatedly assert that the accident occurred in Lebanon County, located in the Middle District. First Resp., ECF 6-1 at 2, 11, 12, 13, 15, 22, 23, 24. And in his First Complaint, Simon represented that the accident occurred "southbound on I-81, at/near mile marker 93," First Compl. ¶ 11, which minimal research would readily establish falls within the Middle District.

Not only is the location of the accident incorrectly pled, but Mr. Simon's description of the accident is questionable. The Second Complaint alleges that the individual Defendant was "driving . . . behind Plaintiff's vehicle when he/she suddenly, and without warning, crashed into the rear-end of the Plaintiff's vehicle." Second Compl. ¶ 9. This is demonstrably wrong according to the police reports. It also contradicts Simon's explicit representation to this Court that Defendant was involved in a tractor trailer crash *in front of* Plaintiff, and that *Plaintiff* ran into Defendant as part of the aftermath of the initial tractor trailer crash. *See* First Resp. at 1. Simon now acknowledges that his Second Complaint falsely represented the accident, and that he introduced these misrepresentations after I issued the First Order to Show Cause. Second Resp. at 1-2.

"Lawyers cannot avoid sanctions by unreasonably failing to investigate whether their factual contentions have support. (That is doubly true if they are aware of facts that could undermine their contentions.)" *Wharton*, 95 F.4th at 148 (citing *Scott v. Vantage Corp.*, 64 F.4th 462, 471 (3d Cir. 2023)). Here, Mr. Simon was aware of numerous facts that undermined his pleadings as to where the accident occurred and how it happened. The record shows that he not only had access to these facts, but had already made representations to the Court as to the correct location of the accident and sequence of events that led to the crash. And Simon's falsities were not de minimis: the misrepresentations go to the core of what transpired and where the case can be brought.

The reasonableness of counsel's conduct depends on several factors, including "the amount of time available to conduct the factual and legal investigation; the necessity for reliance on a client for the underlying factual information;" and "the complexity of the legal and factual issues implicated." *Wolfington v. Reconstructive Orthopaedic Assocs. II PC*, 935 F.3d 187, 207 (3d Cir. 2019) (cleaned up). Here, there are no mitigating circumstances that make Simon's errors reasonable under the circumstances. All the relevant information was already in Simon's possession, and the falsities do not originate from his client. There was no impending statute of limitations deadline that would excuse a hasty filing.[4] And the factual matters at issue are not complex.

Altogether, the circumstances make Simon's conduct objectively unreasonable. That Simon was already on notice that his pleadings contained overt errors makes these violations even more egregious. Rather than adjusting course after being reminded of his Rule 11 obligations, Simon continued to submit filings that contained false and unfounded factual and legal assertions, establishing a pattern of deficient lawyering.

Though Simon claims that his "mistakes were neither intentional nor malicious," Second Resp. at 2, Rule 11 does not have a "pure heart and empty head defense." *Gaiardo*, 835 F.2d at 482 (internal citations omitted). "Rule 11 requires only negligence, not bad faith." *Wharton*, 95 F.4th at 147. It is undisputable that Simon was at the very least negligent in pleading assertions that he knew were false.[5] However, I find that his misrepresentations made after my first order to

---

[4] The accident occurred on January 16, 2024. *See* Police Reports, ECF 6-1.

[5] Simon himself acknowledges that these were "silly and stupid mistakes" caused by "sloppiness and haste," and admits that "I certainly should have known better." Second Resp. at 1-2.

show cause, in direct contradiction to the record and his prior representations, go beyond negligence and are willful. Simon violated Rule 11(b)(3).

### 2. 11(b)(2): Inquiry into the Law

Under Rule 11, attorneys certify that any "legal contentions" they make "are warranted by existing law or by a nonfrivolous argument." Fed. R. Civ. P. 11(b)(2). Rule 11's "target is *abuse* – the Rule must not be used as an automatic penalty against an attorney or a party advocating the losing side of a dispute." *Gaiardo*, 835 F.2d at 482 (emphasis added). However, sanctions under Rule 11 are warranted "in the exceptional circumstance where a claim or motion is patently unmeritorious or frivolous." *Ario v. Underwriting Members of Syndicate 53 at Lloyds for 1998 Year of Account*, 618 F.3d 277, 297 (3d Cir. 2010) (citation omitted).

In both the First and Second Complaint, Mr. Simon advanced legal positions flatly inconsistent with settled law given the facts of the case, first as to jurisdiction, then as to venue. In his Second Response, Simon now asserts that he might have a viable theory of venue in this district, but that is wholly irrelevant when it comes to his prior misrepresentations.[6]

---

[6] Remarkably, counsel's new, alternative theory of venue shows a similar lack of legal analysis. Mr. Simon's "sufficient contacts" venue theory could be interpreted as invoking either 28 U.S.C. § 1391(b)(1) or (b)(3).

Under (b)(1), venue is proper in "a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located." *Id.* To establish residency for these purposes, Plaintiff would need to establish that this court has personal jurisdiction over Quality Freight. *See* 28 U.S.C. § 1391(c)(2). Since there would be no credible basis on which to assert specific jurisdiction over Quality Freight, Plaintiff would need to meet the test for general jurisdiction. That is a daunting proposition given the degree that the Supreme Court has narrowed the standard. *See, e.g., Goodyear Dunlop Tires Ops., S.A. v. Brown*, 564 U.S. 915 (2011); *Daimler AG v. Bauman*, 571 U.S. 117 (2014). Freight shipments through the Eastern District of Pennsylvania, however frequent, would hardly suffice to make it "at home" here. Then, even if Plaintiff carried that heavy burden, venue would still not be proper because (b)(1) requires that *all* defendants reside here, and co-defendant Chaudhry is a resident of Virginia. Second Compl. ¶ 3.

Alternatively, Mr. Simon may intend to invoke 28 U.S.C. § 1391(b)(3). That too would require Plaintiff to establish general jurisdiction over Quality Freight. Once again, even if Plaintiff overcame that obstacle,

Courts should exercise particular caution in evaluating potential Rule 11(b)(2) violations to avoid deterring thoughtful and novel legal arguments or legitimate challenges to settled doctrine. *See Gaiardo*, 835 F.2d at 483 ("advocating new or novel legal theories" "does not trigger a sanction award"); Fed. R. Civ. P. 11, 1993 advisory committee note ("the extent to which a litigant has researched the issues and found some support for its theories even in minority opinions, in law review articles, or through consultation with other attorneys should certainly be taken into account in determining whether paragraph (2) has been violated").  Here, the issues of jurisdiction and venue in this case are not cutting edge, but rather involve well-established foundational doctrines set forth in easily understood statutory provisions that Mr. Simon cited in his Complaints.  Any attorney should be able to determine whether jurisdiction and venue are proper in a straightforward case such as this.  An attorney like Mr. Simon, with 19 years of experience including hundreds of diversity cases in federal court, should be particularly well-versed in jurisdiction and venue and be able to make nonfrivolous jurisdiction and venue assertions.  *See* Second Resp. at 3.  And his post-hoc offer to save the Court time by not pursuing an equally meritless theory of venue lends nothing to his cause.

It is evident that Simon has failed to analyze the law before submitting both Complaints as well as his Second Response to this court.  Overall, Mr. Simon's behavior is patently unreasonable, violating Rule 11(b)(2).

---

venue would not exist under subsection (b)(3) as it can only be invoked "[i]f there is no district in which an action may otherwise be brought as provided in this section…"  That requirement cannot be met here because venue indisputably exists in the Middle District under (b)(2).

It does not weigh in Mr. Simon's favor that his third swing of the bat is also a miss.  *See* Fed. R. Civ. P. 11(b); *BP P.L.C. v. Mayor & City Council of Baltimore*, 593 U.S. 230, 246 (2021) ("the Federal Rules of Civil Procedure allow courts to sanction frivolous arguments made in virtually any context").

### B. Appropriate Sanctions

Having found that Mr. Simon violated Rule 11(b)(2) and (3), I must now determine what sanctions are appropriate. Rule 11 provides that "[a] sanction imposed under this rule must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated." Fed. R. Civ. P. 11(d)(4). Thus, the main purpose of Rule 11 is to deter. *DiPaolo v. Moran*, 407 F.3d 140, 146 (3d Cir. 2005). But in deciding what sanctions are necessary, "District courts have broad discretion to impose proportional sanctions." *United States v. Brace*, 1 F.4th 137, 144 (3d Cir. 2021).

Relevant factors Courts should consider in determining which sanctions are appropriate include whether the violation is part of a pattern; whether it infected the entire pleading; whether the attorney has engaged in similar conduct in other litigation; the effect on litigation; what sanction will deter the attorney from similar behavior; what sanction will deter other attorneys from similar behavior; and whether the behavior was willful, negligent, or intended to injure. *See* Fed. R. Civ. P. 11, 1993 advisory committee note. I must also consider Mr. Simon's history of filing frivolous pleadings, the degree of frivolousness, whether there is a risk that sanctions will discourage valid litigation, and the impact of the violation on Defendants. *See Doering v. Union Cnty. Bd. of Chosen Freeholders*, 857 F.2d 191, 197 n.6 (3d Cir. 1988) (listing possible mitigating factors).

As detailed above, the unfounded factual and legal contentions in this case are inexcusable and weigh towards imposing significant sanctions, particularly when Mr. Simon was shown leniency after the first frivolous filing. The errors infected the entire pleading and had substantial impact in that they went to the very power of the court to hear the case. And in the Second Complaint, the errors forced the Defendants to expend resources engaging in unnecessary motion

practice.  Imposing sanctions for these completely unfounded contentions will hardly deter valid

litigation.[7]  Rather, sanctions are necessary to deter such facially deficient pleadings from both

Simon and other attorneys.  Weighty sanctions are therefore justified.

I also consider whether the Rule 11 violation at issue is an isolated occurrence or part of a

broader pattern.  *See Doering*, 857 F.2d at 197 n.6.  Here, there is a clear pattern of litigation abuse

in both Complaints, and within Mr. Simon's response to the Second Rule to Show Cause.  Looking

more broadly at Simon's recent cases in the Eastern District of Pennsylvania, I am struck by a

clear pattern of facially deficient pleadings – particularly with respect to jurisdiction and venue –

that similarly appear to violate Rule 11 and consume court time and resources.[8]  It seems almost

---

[7] *See Carlino v. Gloucester City High Sch*., 57 F.Supp.2d 1 (D.N.J. 1999) *aff'd in part,* 44 Fed.Appx. 599, 601 (3d Cir. 2002) (affirming monetary sanctions against counsel who "flagrant[ly] fail[ed] to conduct any legal research").

[8] *See, e.g., McFadden v. Connors et al.*, 24-cv-410 (Judge Kearney dismissing the case sua sponte, ECF 5, after Simon failed to respond to the Court's Order to Show Cause, ECF 2, because the complaint invoked diversity jurisdiction but did not plea the citizenship of the corporate defendants); *Sanithsone v. Walmart Stores East, LP et al.*, 24-cv-5832 (Chief Judge Goldberg dismissing the case sua sponte, ECF 4, because Simon asserted diversity jurisdiction but insufficiently pled the corporate defendants' citizenship while indicating that they might be non-diverse); *Johnson v. Target Corp. et al.,* 24-cv-3816 (dismissing one defendant sua sponte, ECF 20, after plaintiff failed to comply with the Court's Order to Amend, ECF 16, because the complaint failed to assert a defendant's citizenship in a diversity matter); *Young v. Holman, Inc. et al.*, 23-cv-4257 (dismissing the case sua sponte, ECF 5, after Simon failed to respond to an Order to Amend the Complaint or Show Cause, ECF 3, because "Mr. Young's inartful pleading does not allow us to verify the parties' diversity.  Mr. Young does not plead his own citizenship.  Mr. Young does not plead Holman, Inc.'s place of incorporation or principal place of business.  He does not plead the citizenship of Ally US, LLC's members.  We cannot exercise subject matter diversity jurisdiction if we are unaware of each parties' citizenship"); *Serrano v. Upperman et al.*, 23-cv-4482 (Judge Wolson issuing a sua sponte Order to Show Cause why the court should not dismiss for a lack of subject matter jurisdiction, ECF 10, after the Court had already ordered Plaintiff to amend the complaint to address subject matter jurisdiction, ECF 6, upon finding that Plaintiff's "First Amended Complaint does not cure the deficiency in subject matter jurisdiction that I identified"); *see also Walker v. Essentia Insurance Co.*, 24-cv-317 (Plaintiff voluntarily dismissing the case, ECF 7, after Defendant filed a Motion to Dismiss, ECF 5, claiming that "none of the alleged 'events or omissions giving rise to the claims asserted' in the Complaint occurred in the Eastern District of PA.  Specifically, *per the Complaint, the subject accident occurred in New Jersey*" . . . and "As such, venue in the Eastern District of PA is wholly improper per 28 U.S.C 1391(a)(1) and (2) and dismissal of the Complaint or in the alternative transfer to the Middle District of PA is appropriate.").

as if the Simon firm prepares pleadings on a mass production basis without investing time and attention in understanding the basic facts of the case. I cannot therefore credit Simon's contention that his errors in this case are "not consistent with how [he] typically practice[s] law." Second Resp. at 2. Though I would issue sanctions irrespective of this broader pattern, the number of improperly pled claims indicate that more severe sanctions are necessary for deterrence.

These Rule 11 violations are particularly troublesome considering Mr. Simon's professional experience and leadership positions. Simon has been a trial attorney for 19 years, regularly practicing in federal and state court.[9] *See* Second Resp. at 3. He is the founding and managing partner at Simon & Simon, PC, where he oversees over 30 attorneys.[10] He cites his membership on the Boards of Directors of both the Philadelphia Trial Lawyers and the Pennsylvania Association for Justice as credentials weighing in his favor. Second Resp. at 3. In my view, such leadership positions make these violations worse. Those who hold themselves out as leaders of the bar must set the standard for professionalism. This is not a view adopted from this side of the bench. It represents the same message I delivered to members of the plaintiffs' trial bar as president of the Philadelphia Trial Lawyers Association nearly 25 years ago. In addressing the importance of the civil justice system in providing redress for injuries, I observed that "there is a profound difference between legitimately seeking to expand the boundaries of the law, and asserting a patently ridiculous position . . . Irresponsible lawyering does not just abuse

---

In two other cases on my docket, lawyers from Simon & Simon failed to appear at scheduled conferences, claiming errors on the part of support staff.

[9] A review of the Eastern District of Pennsylvania's Case Management/Electronic Case Files program reveals that Mr. Simon has been an attorney in over 850 cases in the Eastern District of Pennsylvania.

[10] *See* Simon & Simon, PC, Our Attorneys, available at https://www.gosimon.com/about/attorneys/.

the legal system in one particular case, but plays into the hands of those who would use anecdotes about groundless cases as the basis for reshaping our entire legal system." Gerald McHugh, *Preserving the Tradition*, Philadelphia Trial Lawyers Association Verdict, Vol. XVI, Issue 5, at 3 (May 1998). To the extent that Mr. Simon seeks to lead, he should lead by example, and his conduct here is hardly the example to set.

Mr. Simon has acknowledged and accepted responsibility for some – though not all – of the Rule 11 violations identified in his Complaints. Simon admits the factual errors within the Second Complaint and recognizes that his pleading was self-contradictory and "different than what was contained in the police report." Second Resp. at 1. He also recognizes that his assertion that diversity jurisdiction existed in the First Complaint was a "mistake." First Resp. at 1. I do not give Simon's admission much weight because it would have been foolhardy to defend such blatant inaccuracies after they were identified by the Court. I also find that Mr. Simon's repeated misconduct after he was put on notice by the original order to show cause transcends mere negligence and can only be considered reckless or willful.

Mr. Simon requests that this Court consider his firm's investment into the case, contending that "my firm has worked with him to get the best medical care for his injuries." Second Resp. at 2. Not exactly. In this case, as in virtually every case involving Mr. Simon's firm, the plaintiff was examined by a physician after which a life care plan was prepared.[11] Invariably, intensive and costly medical treatment is recommended. But I have yet to see a single case involving the Simon

---

[11] It should be noted that lawyers are often required to pursue forensic exams because many treating physicians are unwilling to assist with litigation. And in cases of serious and permanent injury, life care plans play an important role in assessing future needs. When, however, a firm persistently uses the same forensic examiners, and in every case, without fail, monumental future costs are projected, it becomes difficult to read the reports in question as credibly addressing actual patient needs.

office where any plaintiff actually pursued the recommended care.  I therefore view these reports as litigation documents, bearing little relationship to real world medical care.  The expenses associated with such expert reports are part of the standard costs of plaintiffs' litigation, for which counsel is routinely reimbursed.  I am at a loss to see how the advancement of such costs is a mitigating factor under Rule 11.

Mr. Simon also asks the Court to consider his personal and his firm's "good reputation in the legal community and in this Federal Court and the Pennsylvania State Court system." *Id*.  To the extent that this is an invitation for the Court to take judicial notice, based upon my experience in this case and other cases involving the Simon firm, together with  the cases set forth in footnote 8 above, I must decline.  Beyond that, Mr. Simon presents no evidence of reputation, and thus his subjective characterization of his standing in the legal community does not mitigate the need for sanctions.

Looking at the totality of the circumstances, three sanctions will be imposed, which I consider to be the most lenient sanctions necessary to deter future violations.

### 1.   *Reprimand*

First, I find it necessary to formally reprimand Mr. Simon.  Practicing law is a privilege that comes with significant responsibilities to clients, other parties, the Court, taxpayers, and society at large.  Failing to comply with the duties of an attorney by filing pleadings containing false representations and legally unsupportable contentions is a violation of Rule 11 that wastes resources.

### 2.   *Monetary Sanctions*

I am also persuaded that monetary sanctions are necessary to deter future violations. Before imposing monetary damages, courts should consider an attorney's ability to pay.  *DiPaolo*,

407 F.3d at 146 ("courts considering monetary sanctions should take into account the party's financial resources"). When attorneys are solo practitioners with limited financial assets and numerous dependents, a large monetary sanction may not be warranted. *Id.* at 146. Here, Simon has not introduced any evidence as to limited financial resources, and he is a founder of a thirty-lawyer firm. *See Young v. Smith*, 905 F.3d 229, 237 (3d Cir. 2018) ("in *Doering*, the sanctioned attorney specifically asked the District Court to reduce the award and submitted evidence attesting to his limited financial resources. Here, Pollick did not request a reduction of the sanction, nor did she submit anything to substantiate her claimed inability to pay.").

The monetary sanction must be set at an amount that is adequate to deter future conduct, while simultaneously taking into consideration the cost that has been imposed on taxpayers. Numerous other courts imposing sanctions have considered the judicial resources expended as a result of the Rule 11 violations when considering what monetary sanctions are appropriate. I will follow suit.[12]

---

[12] *See In re Engle Cases*, 283 F.Supp.3d 1174, 1253-54 (M.D. Fla. 2017) (using the Rand Study's estimate and the Bureau of Labor Statistics inflation-adjustment calculator to determine sanctions); *Nogess v. Poydras Ctr., LLC*, No. 16-15227, 2017 WL 396307, at *14-15 (E.D. La. Jan. 30, 2017) (same, and collecting cases using the Rand Study)*; Thiel v. First Federal Savings & Loan Ass'n of Marion*, 646 F.Supp. 592, 598 (N.D. Ind. 1986), *aff'd in part dis'd in part*, 828 F.2d 21 (7th Cir. 1987) (imposing a sanction of $3,600 based upon $600 per hour); *Dyson v. Sposeep*, 637 F.Supp. 616, 624 (N.D. Ind. 1986) (using the $600/hour formula and stating it would also be used in the future); *Advo Sys., Inc. v. Walters*, 110 F.R.D. 426, 433 (E.D. Mich. 1986) (noting that the court cannot tolerate an unnecessary drain on judicial resources caused by actions without merit and that in future cases the $600 per hour formula would be used to impose sanctions). In more recent years, Courts have continued to use this formula adjusting the hourly rate for inflation. *See, e.g., Enright v. Auto-Owners Ins. Co.*, 2 F.Supp.2d 1072, 1076 n. 2 (N.D. Ind. 1998) (adjusting the rate to $900 per hour); *International Union of Electronic, Electrical, Salaried, Machine & Furniture Workers (AFL–CIO), Local 84907 v. Visteon Systems, LLC*, No. 6-275, 2007 WL 647499, at *9 (S.D. Ind. 2007) (same); *In re Kentwood Pharmacy, L.L.C.*, 475 B.R. 602 (Bkrtcy. W.D. Mich. 2012) (citing the Bureau of Labor Statistics CPI Inflation calculator).

Though judicial resources are hard to quantify, Kakalik and Robyn's 1982 *Costs of the Civil Justice System: Court Expenditures for Processing Tort Cases* (the "Rand Study") is widely considered the most authoritative estimate on the public cost of litigation.  J. Kakalik & A. Robyn, COSTS OF THE CIVIL JUSTICE SYSTEM: COURT EXPENDITURES FOR PROCESSING TORT CASES at 49 (Rand Institute for Civil Justice 1982).[13]  According to the Rand Study, a single hour spent by a federal judge in a tort case cost the government $600 in 1982.[14]  Levin & Colliers, *Containing the Cost of Litigation*, 37 Rutgers L. Rev. 219, 227 19-22 (1985) (using the Rand source data to calculate an hourly cost).  Adjusted for inflation using U.S. Bureau of Labor Statistics CPI inflation calculator,[15] this equates to $2,000 per hour in November, 2024 dollars.

I have spent several hours on this case as a direct result of Simon's violations of Rule 11.  Some of my staff have spent far more.  I conservatively estimate that between $6,000 and $12,000 of judicial resources, funded by the taxpayers, have been expended.

I believe that $7,500 is an appropriate and conservative sanction.  I do not believe that non-monetary sanctions alone, or a smaller monetary sanction, would adequately deter Mr. Simon from

---

[13] Many courts and academics consider this study to be the most authoritative source on the public cost of litigation.  *E.g., In re Engle Cases*, 283 F.Supp.3d at 1253-54; J. Resnik, *Managerial Judges*, 96 Harv. L. Rev. 374, 423 n.188 (1982); A. Levin & D. Colliers, *Containing the Cost of Litigation*, 37 Rutgers L. Rev. 219, 219-22 (1985); *Nogess*, 2017 WL 396307, at *14 (collecting cases using figures from the Rand Study to calculate sanctions).

[14] This figure incorporates the costs of supporting staffing, such as law clerks and the Clerk's Office personnel.

[15] The Court takes judicial notice of the Bureau of Labor Statistics inflation-adjustment calculator, a widely-used tool for calculating the present-day value of dollars.  CPI Inflation Calculator at https://www.bls.gov/data/inflation_calculator.htm.  *See Allen v. Bowen*, 821 F.2d 963, 968 (3d Cir. 1987) ("The application of the Consumer Price Index to the rate and hours here, which are undisputed, is merely a matter of calculation.").  Other courts have used this methodology to calculate sanctions based on the Rand Study.  *See Nogess*, 2017 WL 396307, at *15; *In re Engle Cases*, 283 F.Supp.3d at 1253-54.

future Rule 11 violations.  Such a sum will hardly represent an undue financial burden for Mr. Simon.  And I find it to be sufficiently meaningful to deter him from violating Rule 11 again and to compensate for some (though not all) of the judicial and taxpayer resources that have been spent addressing his false and frivolous pleadings.

One can reasonably question whether a judge's time should be valued in this way.  If a judge is not working on one case, then they are working on another.  But time spent dealing with frivolous arguments is time wasted, and the docket of every federal judge has no shortage of cases where the issues are profound and the consequences immense.  Assigning an economic value to a judge's time is an objective measure by which to quantify the immense opportunity cost when a judge must police bad lawyering.

### 3.  *Distribution of This Memorandum to Firm*

Another nonmonetary sanction deployed by courts is the mandatory distribution of a sanctions memorandum to every attorney at a law firm.  This is not typically an appropriate sanction for new and inexperienced attorneys, whose reputation is still developing whose career could be significantly impacted.  But courts have found this to be an appropriate sanction for Rule 11 violations committed by a law firm partner who "appear[s] regularly and frequently" in the Court and claims "expertise and experience." *Huettig & Schromm, Inc. v. Landscape Contractors Council of N. California*, 582 F.Supp. 1519, 1522-23 (N.D. Cal. 1984), *aff'd*, 790 F.2d 1421 (9th Cir. 1986) (requiring sanctioned attorney to pay attorney's fees and "that a copy of this memorandum of opinion and order has been given to every partner and associate of the firm").

Partners at law firms – particularly founding and managing partners – set the professional standards for the entire firm.  Less experienced attorneys emulate the experienced litigators around them.  In addition, Mr. Simon has specifically told this court that it was his team – not himself

personally – who drafted the Complaint.  First Resp. at 2, ECF 6, 24-cv-5307.  According to Simon, when he subsequently reviewed the Complaint and signed off on it, he "missed" the errors it contained.  *Id*.  As the person signing the complaints, Mr. Simon's Rule 11 responsibilities are nondelegable.  Fed. R. Civ. P., 1993 advisory committee note ("The person signing, filing, submitting, or advocating a document has a nondelegable responsibility to the court, and in most situations is the person to be sanctioned for a violation").  But, based on the many Simon & Simon, PC cases that have come before me and my colleagues, I am persuaded that the facially obvious errors found in this case reflect a cultural norm at Simon & Simon to prioritize volume at the expense of accuracy.

Although this is a serious sanction, I conclude that it is necessary to deter the types of errors present in this case and other cases cited above.

### 4.  Alternative Sanctions I Decline to Impose

Other more serious sanctions have been considered but not imposed.  These include dismissing claims, requiring remedial legal education, referral to disciplinary authorities, and suspension from practicing before this Court.  I reject such sanctions as too severe, considering that the conduct in question did not cause lasting harm to the client or other parties in this case.

Mr. Simon requested that the Court consider volunteer service or a contribution to a legal service agency as alternative sanctions.  Third Response at 1, ECF 13, 24-cv-5657.  I decline to issue such sanctions.  It is not within the Court's power to order Simon to make a financial contribution to a legal service agency as a Rule 11 sanction.  Fed. R. Civ. P. 11, 1993 advisory committee note ("a monetary sanction imposed after a court-initiated show cause order [is] limited to a penalty payable to the court"); *Wolfington*, 935 F.3d at 208.  As to pro bono legal services, it would not be appropriate.  Preliminarily, I note that neither Mr. Simon nor his firm has any

discernible presence in Philadelphia's pro bono and public interest community, so this new-found interest is puzzling.  More importantly, pro bono clients deserve quality representation, and on the record before me I lack confidence that it would be rendered.

**IV.    Conclusion**

For the reasons set forth above, I conclude that Mr. Simon has violated Rule 11 multiple times and shall be sanctioned accordingly.  An appropriate order follows.

 /s/ Gerald Austin McHugh

United States District Judge
